\*\* NOT PRINTED FOR PUBLICATION \*\*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| DEADRA LYNN COMBS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION No. 9-12-CV-210 |
| v. | § | |
| | § | JUDGE RON CLARK |
| CITY OF HUNTINGTON, TEXAS, | § | |
| | § | SJF |
| *Defendant.* | § | |

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Before the court is Plaintiff's Motion for Attorney's Fees. Doc. # 83. Defendant objects to both the hourly rates sought by Plaintiff's counsel and the number of hours billed. Doc. # 91. Plaintiff's Motion for Attorney's Fees (Doc. # 83) is GRANTED IN PART.

### I.   Background

Plaintiff filed suit against Defendant, her former employer, alleging sexual harassment, retaliation, and quid pro quo harassment. Plaintiff's allegation related to conduct of her then supervisor, City Manager Bruce Milstead. The court submitted this case to the jury on May 29, 2014, and that day, the jury returned a verdict in favor of Plaintiff on sexual harassment for $5,000.00. The jury found for Defendant on retaliation and quid pro quo harassment. The court entered a final judgment on June 2, 2014.

### II.   Applicable Law

In an action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the prevailing party is entitled to reasonable attorney's fees. 42 U.S.C. § 2000e-5. Calculation of attorney's fees is a two-step process where first the court multiplies a

1

reasonable number of hours by a reasonable hourly rate, to produce the lodestar amount, and then decides whether an adjustment is warranted after considering the twelve *Johnson* factors. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995). While the court must consider each factor, it need not act upon any factor. *See Kellstrom*, 50 F.3d at 330.

In determining a reasonable number of hours, "the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court may reduce the number of hours if the billing records are vague or incomplete. *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). "The reasonable hourly rate is based on the 'prevailing market rated in the relevant community.'" *Id.* at 1234 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Unfortunately, the process of awarding fees is complicated by two factors. First, counsel requesting fees frequently neglect to read the Supreme Court and Fifth Circuit decisions that set out the factors the court must consider and the kinds of evidence that may be used to support a finding on those factors. Second, it has long been the law in this Circuit that a judge may not rely on either the experience gained from years of practice in the district before assuming the bench or the experience from ruling on dozens of fee applications in previous cases. *See League of United Latin Am. Citizens,* 119 F.3d at 1234; *Cobb v. Miller*, 818 F.2d 1227, 1232 n.7 (5th Cir. 1987). The result in far too many cases is satellite litigation over fees; in this relatively uncomplicated case, no fewer than four replies and sur-replies were filed after the initial motion and response.

### III.   Analysis

A.   <u>Reasonable Number of Hours</u>

Plaintiff's counsel did not bill for travel time, which would have been permissible at a

reduced rate.  Plaintiff's counsel only billed a very limited amount of legal research.  The court has sustained objections to particular items not incurred in this suit, as well as items that constituted duplicative billing.  Plaintiff's counsel also discounted the overall number of hours by 20%, due to the limited recovery of Plaintiff.  The court may not refer to its own experience, but the evidence supports a finding that the resulting number of hours is reasonable.

    *1.  Duplicative Billing*

Defendant argues that Plaintiff's counsel should not recover the attorney's fees for both Ms. Hatcher and Mr. Aronowitz for their attendance at the depositions in this matter.  Defendant alleges, and Plaintiff does not controvert, that Ms. Hatcher did not question any of the deponents.  Plaintiff's only factual response was to state in a second affidavit that "I did participate.  I just did not ask the questions."  Doc. # 92-1, p. 3.  Plaintiff also cited a district court case for the proposition that it was not necessarily unreasonable to have a second attorney present at a deposition.  *See Coe v. Chesapeake Exploration, LLC*, No. 2:09-CV-290-TJW, 2011 WL 4356728, at *4 (E.D. Tex. Sept. 15, 2011) (finding more than one timekeeper was reasonable in oil and gas case).  The court does not rely upon its experience to note that oil and gas cases tend to be complex but rather points out that the judge in *Coe* relied upon the record in that case.  The record in this case shows that it was a relatively straight forward disagreement over "who said and did what to whom" and whether it was welcome or not.  At deposition and at trial, these were basic matters of witness credibility and not of expertise in a complex technical area.

   Because Ms. Hatcher asked no questions at the depositions, and Plaintiff provided no reason that two attorneys were necessary or reasonable, the court reduces Ms. Hatcher's total number of hours by 24.5 for the depositions of Plaintiff, Gregson, Narro, Woolbright, and Milstead.

*2. State Court Proceedings*

Defendant objects to the 29.5 hours for the depositions of Plaintiff, Gregson, and Narro (nee Josefsson) that were taken in the related state court proceeding involving Plaintiff, Defendant, and the Texas Workforce Commission. These were the only deposition of Gregson and Narro, both of whom testified at trial. However, Defendant asserts, and Plaintiff does not deny, that the case in which those depositions were taken is still pending. This is not a situation in which a case was simply transferred to this court. The time spent in that other case is not properly billed in this case and shall be excluded.

*3. Client Communication via E-mail*

Defendant objects to 3.4 hours of time for e-mail communication between Plaintiff and her counsel. One of the leading allegations in malpractice cases is that an attorney failed to communicate with a client. The court finds this time to be reasonable and necessary for the attorney-client relationship, given the issues in the case; the number of potential witnesses; the emotions engendered by the history between the Plaintiff, her family and the alleged harasser; and the length of time the case was pending.

*4. Trial Preparation*

Defendant objects to the sixty-five hours of trial preparation in the weeks leading up to trial as being a vague and incomplete entry. While Plaintiff's entry and response could have been more detailed, the claims are sufficiently definite enough, and the amount of time reasonable enough, that Defendant's objection is overruled.

*5. Administrative Duties*

Defendant objected to approximately 2.0 hours of administrative duties and 0.3 hours for the filing of Ms. Hatcher's pro hac vice form. Plaintiff conceded that the 2.0 hours of

4

administrative duties should not be allowed and does not to object to the removal of the time for filing the pro hac vice form. Doc. # 92, p. 6. Ms. Hatcher's hours are reduced by 2.3 hours.

      B.  <u>Reasonable Rate</u>

Plaintiff's motion for attorney's fees requests an hourly rate for Ms. Hatcher of $375.00 and for Mr. Aronowitz of $305.00. Defendant disputes that these hourly rates are reasonable. The rates must be reasonable, given the prevailing market rate in the community. *See League of United Latin Am. Citizens*, 119 F.3d at 1234. The court may not rely on its own experience with, or knowledge of, local rates in evaluating the application, the affidavits, or the objections. *See League of United Latin Am. Citizens,* 119 F.3d at 1234.

Attached to Plaintiffs motion for fees was a time sheet (Doc. # 83-2) and list of expenses (Doc. # 83-3). There was also an affidavit from Ms. Hatcher that stated her hourly fees were reasonable. Doc. # 83-1. She stated Plaintiff allowed her to use "associate Attorney Mark Aronowitz" but she did not opine on his skill or experience, the reasonableness of his fees, or the time he spent. Doc. # 83-1. No time sheet for Mr. Aronowitz was attached.

Mr. Aronowitz filed a separate affidavit. Doc. # 87. As though mirroring Ms. Hatcher's affidavit, he did not opine on her qualifications, the reasonableness of her time, or hourly rates. More importantly, other than stating that he had tried five civil cases in the Eastern District of Texas since 1996, he gave the court no basis upon which to judge his qualifications.

Such scant evidence practically begged for objections from Defendant, and sure enough, eleven days later they were filed. Doc. # 91. Ten days later, Plaintiff filed her Reply. Doc. # 92. Here, Ms. Hatcher finally favored the court with a description of her legal experience and provided evidence that she reduced her hours, eliminated duplicative time, and, in her words, "exercised plenty of billing judgment." Doc. # 92-1, p. 3.

Plaintiff also provided the affidavit of Mr. Griffin who opined that Ms. Hatcher's fees (but not Mr. Aronwitz's) were reasonable and necessary. Doc. # 92-3. Unfortunately, the opinion did not mention that the time spent was reasonable but merely notes that it was based on "the difficulty of Civil Rights cases, and the difficulty of trying Civil Rights cases in the Eastern District of Texas." Doc. # 92-3.[1] The court sustains Defendant's objection to this affidavit as an *ipse dixit* conclusion.

Finally, Plaintiff presented the affidavit of Mr. Timothy Garrigan, of Stuckey, Carrigan & Castetter. Doc. # 92-2. Defendant objected to the affidavit and presented arguments against it. The objections are overruled. Mr. Garrigan practices in the Eastern District. He did not speculate but stated what he personally knew about local rates. Defendant submitted no contravening evidence about prevailing local rates. Accordingly, given Ms. Hatcher's affidavit about her own experience and the court's observations of Ms. Hatcher's ability in trial, without intending to set any precedent, the court finds that in this case only, Mr. Garrigan's affidavit supports Ms. Hatcher's requested hourly fee of $375.00 per hour.[2]

As noted above, Mr. Aronowitz's affidavit is not a model of clarity, but Defendant did not object to his hourly rate, the hours spent, or to his total fee. Rather, Defendant argued that Ms. Hatcher should have a lower rate or "no more than that of Mr. Aronowitz." Doc. 91, p. 8.

---

[1] Of course, in determining attorney fees this court does not rely upon its own experience but merely notes that while Plaintiffs frequently fail to present sufficient evidence to get past the *Mcdonald-Douglas* analysis on summary judgment, once they overcome that barrier, their success rate has been well above seventy-five percent in Lufkin, Beaumont, and Sherman division cases tried by the undersigned.

[2] As required, the undersigned will not consider its knowledge, gained as the presiding judge in the case in which Mr. Garrigan correctly states he was awarded $400.00 per hour by this court, that the case was an extremely difficult class action of great local importance, which took many years.

Therefore, again for this case only, there being no objection, the court will approve his hourly rate.

Accordingly, Mr. Aronowitz's lodestar amount is 126.96 hours (80% of 158.7 hours) at $305.00 per hour, for a total of $38,722.80. Ms. Hatcher's lodestar amount is 149.04 hours (80% of 186.3) at $375.00, for a total of $55,890.00.

### C. Adjustment of the Lodestar Amount

The court must next consider whether the lodestar amount should be adjusted because of various factors.

> The factors include: 1) the time and labor required for the litigation; 2) the novelty and complication of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorney had to refuse other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case circumstances imposed any time constraints; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable;" 11) the type of attorney-client relationship and whether that relationship was long-standing; and 12) awards made in similar cases.

*Kellstrom*, 50 F.3d at 329 n. 19 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

The issues were neither novel nor complicated, so no adjustment is warranted. No evidence was presented for the court's consideration to justify an adjustment based on the time and labor required, which in this case is accounted for in the lodestar calculation. Nothing in the case indicated that an extraordinary skill level was required to litigate this employment case properly, or that anything undesirable about the client or the case itself precluded other work.

Ms. Hatcher opined that the rate she requested was her customary rate as did Mr. Aronowitz, which for this case only, the court has found reasonable, so no adjustment is needed. Ms. Hatcher and Mr. Aronowitz both said they had a contract for the greater of an hourly fee or a

contingent fee. As the court has employed the lodestar method, there is no need to examine or issue an advisory opinion about the propriety of such a contract in a Title VII case.

There is no evidence that either the client or case circumstances imposed any time constraints, and in an ordinary case like this, none would be expected. There is no indication of a long-standing attorney-client relationship. There is no evidence about the experience, reputation, or ability of the attorneys, which would justify a change in the lodestar amount. There was no evidence of awards made in similar cases. The total awarded is not greater than the amounts approved in reported decisions of the Fifth Circuit Court of Appeals.

Defendant focuses on the issue of the limited success of the Plaintiff. There is a value in in a verdict vindicating constitutional and statutory rights, if for no other reason than to provide a measure of deterrence to other violators and to remind municipalities that emphasis on their personnel policies is, in fact, important. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989) (attorney's fees are recoverable except under "special circumstances," as counsel in these matters act as private attorneys general vindicating policy Congress considers of highest priority).

The Supreme Court has limited recovery in cases where plaintiffs received only nominal damages. *Farrar v. Hobby*, 503 U.S. 103 (1992) (holding counsel not entitled to attorney's fees when plaintiff was awarded only one dollar).

Where plaintiffs prevailed on only some of a myriad of complex constitutional claims, and the trial court did not explain why it did not eliminate time on unsuccessful claims, the Supreme Court remanded for a proper determination of fees. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[P]laintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an

excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.").

These cases do not provide much guidance in the present circumstances. To judges who deal with corporate giants fighting over patents or environmental damages, five thousand dollars may seem "nominal." But is five thousand dollars "an inconsequential or trifling sum"? *See* Pattern Civ. Jury Instr. 5th Cir. 15.6 (2014). Do the facts that these jurors live in a rural area and know that Defendant is a very small town that has rid itself of the crudely sexually harassing city manager constitute circumstances that explain the award?

Based on the holdings in *Farrar* and *Hensley*, the Fifth Circuit has held that an award of six-and-one-half times the damages award was excessive, even when the plaintiff recovered far more than the nominal damages described in *Farrar*. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998). This pure ratio approach has the merit of simplicity, but the Court did not indicate what the proper ratio should be. And, at what point in locales that tend toward modest monetary verdicts are we telling those victimized by gross (but not physical) sexual harassment over a period of time, or other violation of their rights, that a "private attorney general" is not for them? Perhaps Defendants should be encouraged to engage in a very early and honest evaluation of what they consider to be low-dollar Title VII claims and to take advantage of an offer of judgment. *See* Fed. R. Civ. P. 68. The "costs" that can be avoided include attorney fees incurred by Plaintiff after the date of the offer. 42 U.S.C. § 2000e-5(k).

Leaving aside the eighth factor related to relative success, based on the evidence submitted, the lack of controverting evidence as to local billing rates or reasonable hours submitted by Defendant, and the prohibition against the court relying upon its own experience and knowledge of local rated, this court would not adjust Mr. Aronowitz's lodestar amount of

9

$38,722.80 or Ms. Hatcher's lodestar amount of $55,890.00, so that the award of attorney's fees to Plaintiff would be $94,612.80.

However, the court is constrained by the holding in *Migis*, to reduce the total to something less than 6.5 times the actual damages awarded.  Plaintiff recovered $5,000.00.  There is evidence that Plaintiff was subjected to repeated, almost continual, sexual harassment by City Manager Milstead.  The jury found sexual harassment occurred.  (For what it is worth, based on its own evaluation of the demeanor and credibility of the witnesses, the court agrees.)  Balancing the Congressional purpose of providing citizens with a real possibility of vindicating their rights, and the *Migis* goal of avoiding excessive fee awards this court finds that attorney's fees of $25,000.000, or five times what Plaintiff recovered, to be justified.

D.  Non-taxable Costs

A court may award costs to prevailing parties.  Fed. R. Civ. P. 54(d).  Pursuant to 28 U.S.C. § 1920, a court may tax as costs the following:

>   (1)   Fees of the clerk and marshal;
>
>   (2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
>   (3)   Fees and disbursements for printing and witnesses;
>
>   (4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
>   (5)   Docket fees under section 1923 of this title;
>
>   (6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation in services under section 1828 of this title.

28 U.S.C. § 1920. A district court is permitted to decline to award costs listed in the statute but may not award costs omitted from the statute. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).

This court may not award Plaintiff, even as prevailing party, any costs not enumerated in the statute. The non-taxable costs that Plaintiff requests fall outside the statute and include miscellaneous copying and legal research fees, reimbursement for faxes, and Ms. Hatcher's pro hoc vice filing fees. As these costs are not listed in 28 U.S.C. § 1920, Plaintiff may not recover them.

### IV. Conclusion

Plaintiff is awarded $25,000.00 in attorney's fees. Plaintiff is not entitled to recover for non-taxable costs. IT IS THEREFORE ORDERED that Defendant shall pay Plaintiff attorney's fees in the amount of $25,000.00.

So **ORDERED** and **SIGNED** this **17** day of **March, 2015.**

_____
Ron Clark, United States District Judge