# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40436

United States Court of Appeals
Fifth Circuit
**FILED**
July 15, 2016
Lyle W. Cayce
Clerk

DEADRA L. COMBS,

    Plaintiff - Appellant

v.

CITY OF HUNTINGTON, TEXAS,

    Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and JONES and DENNIS, Circuit Judges.

CARL E. STEWART, Chief Judge:

    Plaintiff-Appellant Deadra Combs brought a Title VII sexual harassment suit against the City of Huntington (the "City"), asserting hostile work environment, quid pro quo, and retaliation claims. Combs succeeded only on her hostile work environment claim and was awarded a fraction of the damages she sought. Combs then moved for attorney's fees. After calculating the lodestar, the district court reduced the fee award, concluding that the ratio between attorney's fees and damages was excessively disproportionate. Combs appeals, contending that the district court abused its discretion by reducing the award. Because there is no requirement of strict proportionality between attorney's fees and damages, we VACATE the fee award.

No. 15-40436

I.

The City hired Combs as a municipal court clerk in September 2008. From the time she was hired until August 2010, Combs reported to Bruce Milstead, the City Manager. Combs asserted that, over the course of her employment, Milstead subjected her to frequent sexual harassment. Combs eventually filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2010. The City terminated Combs on February 1, 2011. Combs then filed a Title VII sexual harassment suit against the City, contending that (1) she was the victim of quid pro quo harassment, (2) the City failed to alleviate a hostile work environment, and (3) her discharge was retaliation for filing an EEOC charge.

The case proceeded to a jury trial, and each of Combs's theories was submitted to the jury. During jury deliberations, the parties stipulated that Combs would be entitled to $123,027.35 in back pay if the jury found in her favor on her quid pro quo and retaliation claims. In addition, Combs asked the jury to award her $100,000 in damages on her sexual harassment claim and $100,000 in damages on the claims related to her termination. Combs thus sought a total of $323,027.35 in damages. The jury found in favor of the City on Combs's quid pro quo and retaliation claims, eliminating the possibility of a back pay award. The jury found in Combs's favor only on her hostile work environment claim and awarded just $5,000 in damages.

Because she was a prevailing party under Title VII, Combs moved for attorney's fees, seeking compensation for lead counsel Mark Aronowitz and his co-counsel Julia Hatcher (together, "Plaintiffs' counsel"), who represented Combs during the litigation. In calculating the lodestar, the district court determined that some of the requested hours were not properly included and thus reduced the total number of hours billed; the court, however, accepted the hourly rates proposed by Plaintiffs' counsel: $305 for Aronowitz and $375 for

No. 15-40436

Hatcher. Plaintiffs' counsel also proposed a voluntary 20% reduction in the number of hours due to Combs's "limited recovery." The district court accepted this voluntary reduction and calculated the lodestar to be $38,722.80 for Aronowitz (126.96 hours x $305/hour) and $55,890.00 for Hatcher (149.04 hours x $375/hour) for a total of $94,612.80.

The court then considered whether the lodestar should be adjusted due to any of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (the "*Johnson* factors"),[1] *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Relying on *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041 (5th Cir. 1998), the City contended that Combs's limited success—prevailing on only one claim and receiving only $5,000 in damages—required a reduction of the lodestar. The district court agreed, concluding that it was "constrained by the holding in *Migis*, to reduce the total to something less than 6.5 times the actual damages awarded." It then reduced the fee award to $25,000, an amount five times the damages awarded to Combs. Combs timely appealed.

II.

A prevailing litigant may not ordinarily collect an attorney's fee from the loser absent some statutory exception. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 (1989). One such congressionally-created exception is Title VII of the Civil Rights Act of 1964, which allows a district court to award reasonable attorney's fees to the prevailing party. *See id.* (citing 42

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 714 F.2d at 717–19.

3

No. 15-40436

U.S.C. § 2000e-5(k)). An attorney's fee award rests within the sound discretion of the district court, and accordingly, "[w]e will not reverse an award of attorneys' fees unless the trial court abused its discretion or based its award on clearly erroneous findings of fact." *E.E.O.C. v. Clear Lake Dodge*, 60 F.3d 1146, 1153 (5th Cir. 1995). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (citation and internal quotation marks omitted).

III.

Combs challenges the district court's reduction of the fee award, contending that (1) the Supreme Court has overruled this court's method of calculating attorney's fees; (2) a low damages award is an inadequate basis to adjust the lodestar; and (3) the district court abused its discretion in proportionally reducing the lodestar under *Migis*.

A.

In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award. *See Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011).[2] The court must first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* In calculating the lodestar, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* at 379–80. Though the lodestar is presumed reasonable, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010), the court may enhance or decrease it based on the twelve *Johnson* factors, *see Jimenez*, 621 F.3d at 380. "The court must provide

---

[2] Part V of *Jimenez*, 621 F.3d at 379–80, which discussed this circuit's method for calculating attorney's fees was reinstated on rehearing en banc. *See Jimenez*, 660 F.3d at 844 n.1.

4

'a reasonably specific explanation for all aspects of a fee determination.'" *Id.* (quoting *Perdue*, 559 U.S. at 558).

Despite this precedent, Combs asserts that the Supreme Court's decision in *Perdue* limits the two-step method to only "the most unusual circumstances." We do not agree that *Perdue* is so broad.

In *Perdue*, the Supreme Court considered whether the lodestar could be enhanced "due to superior performance and results." 559 U.S. at 546. In the underlying lawsuit, the plaintiffs, children in the Georgia foster-care system and their representatives, brought a class action against Georgia's governor and numerous state officials, asserting that various deficiencies in the state's foster-care system violated their statutory and constitutional rights. *Id.* at 547. The underlying class action settled, and the plaintiffs' attorneys sought more than $14 million in fees under 42 U.S.C. § 1988. *Id.* The district court calculated a $6 million lodestar amount but then increased that amount by 75% because it concluded that the lodestar failed to account for (1) the attorneys' unreimbursed advancement of $1.7 million in expenses over three years; (2) the absence of ongoing pay to the attorneys; (3) the fully contingent nature of the case; (4) the "extraordinary" results obtained; and (5) the attorneys' extraordinarily high degree of "skill, commitment, dedication, and professionalism." *Id.* at 548–49. The district court thus awarded a $10.5 million fee. *Id.*

The Court vacated the award. *See id.* at 557–59. First, the Court observed that § 1988 "does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." *Id.* at 550. Our circuit's use of the *Johnson* factors was the first such attempt. *Id.* at 550–51. But the Court criticized the *Johnson* method, noting that this method "gave very little actual guidance to district courts," "placed unlimited discretion in trial judges,"

and "produced disparate results." *Id.* (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)). In contrast, the Court praised the lodestar method of calculating attorney's fees, because, *inter alia*, it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 551–52. The Court then summarized "important rules" regarding the federal fee-shifting statutes. *Id.* at 552–53. Of particular relevance here, the Court explained that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case" and observed that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.* at 552.

The Court then turned to the precise issue at hand: "whether either the quality of an attorney's performance or the results obtained are factors that may properly provide a basis for an enhancement." *Id.* at 554. Because "superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance," the Court considered only "whether superior attorney performance can justify an enhancement." *Id.* The Court concluded that superior attorney performance could warrant an enhancement but limited such enhancements to three rare and exceptional circumstances, all of which "require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* at 554–55 (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Because the district court failed to "provide proper justification for the large enhancement it awarded," the Court held that the fee award could not stand. *Id.* at 557.

Combs argues that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar. We agree that *Perdue* requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g.*, *League of United Latin Am. Citizens No.*

*4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.'"). But *Perdue* does not, as Combs contends, make it impermissible to then consider any relevant *Johnson* factors. *Perdue* cautions against the sole use of the *Johnson* factors to calculate a reasonable attorney's fee but nowhere calls into question the use of relevant *Johnson* factors to make this determination. Indeed, *Perdue* expressly allows adjustments "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554.

Combs next asserts that *Perdue* requires that reductions to the lodestar, like enhancements to it, be allowed only where the outcome of the litigation is directly tied to the attorney's performance. Not so. In *Perdue*, the Court emphasized that it is enhancements that must be rare because, instead of merely guaranteeing adequate representation, they can result in a windfall to attorneys. *See id.* at 559 & n.8. As the Court explained, "unjustified enhancements that serve only to enrich attorneys are not consistent with the . . . aim" of fee-shifting statutes. *Id.* at 559. Thus, excellent results should usually result only in "a fully compensatory fee"—the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Consistent with *Hensley*, the Court repeatedly explained prior to *Perdue* that the lodestar may be increased only in extraordinary circumstances. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("We have established a strong presumption that the lodestar represents the reasonable fee, and have placed upon the fee applicant who seeks more than that the burden of showing that such an adjustment is *necessary* to the determination of a reasonable fee." (internal quotation marks and citations omitted)); *Del. Valley Citizens' Council*, 478 U.S. at 565 (stating that lodestar enhancements, while permissible, "are proper only in certain

7

'rare' and 'exceptional' cases" and noting that fee-shifting statutes are not designed "to improve the financial lot of attorneys"). *Perdue* simply emphasizes what the Court has long recognized: enhancements are permissible only in a rare and exceptional class of cases. *See Jimenez*, 621 F.3d at 380 (citation omitted) (reading *Perdue* as "limiting upward adjustments in light of 'a strong presumption that the lodestar is sufficient'").

And though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. A plaintiff's limited success is just such a factor. In *Hensley*, the Supreme Court explained that "the most critical factor" in determining a reasonable fee "is the degree of success obtained." 461 U.S. at 436. There, the Court endorsed using "the important factor of the 'results obtained'" to decrease the lodestar, noting that where a plaintiff achieves "only partial or limited success," the lodestar may be excessive. *Id.* at 434, 436. *Perdue*, consistent with the Court's frequent pronouncements, explains that lodestar enhancements are to be rare. But it provides no basis to depart from *Hensley*'s rule that courts must consider the plaintiff's degree of success to determine whether the lodestar is excessive. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (noting that the district court failed, after calculating the lodestar, to consider plaintiff's success in the lawsuit); *see also Hensley*, 461 U.S. at 436 ("Congress has not authorized an award of fees . . . whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.").

Combs relies on *Millea v. Metro-North Railroad Co.*, 658 F.3d 154 (2d Cir. 2011), but we find this case unpersuasive. There, citing *Perdue*, the Second Circuit concluded that a district court erred by reducing "the attorneys' fee award based on the outcome of the litigation without tying that outcome to the quality of [plaintiff's] attorneys." *Id.* at 169. The court explained that,

absent a nominal victory, litigation outcomes are generally "only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance." *Id.* at 168. But *Millea* does not cite—much less reconcile—*Hensley*, which explained that courts must consider a plaintiff's limited success in determining what fee is reasonable. *Hensley*, 461 U.S. at 438–40. Indeed, the degree of success is the most critical factor even if "conscientious counsel tried the case with devotion and skill." *Id.* at 436. We decline to adopt *Millea*'s reasoning.

We also reject Combs's contention that *Hensley* applies only to cases involving multiple claims and varying levels of success. The Supreme Court has emphasized that the degree of success is the most crucial element in determining a reasonable attorney's fee. *See Hensley*, 461 U.S. at 436; *accord Marek v. Chesny*, 473 U.S. 1, 11 (1985). "A reduced fee award is appropriate if the *relief*, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440 (emphasis added). The Court has thus found error where a district court, in setting a fee award, simply awarded the lodestar "without engaging in any measured exercise of discretion." *Farrar*, 506 U.S. at 114. *Hensley*'s mandate that courts consider the limited nature of a plaintiff's success applies to all cases.

In sum, the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar. In light of the "strong presumption" that the lodestar represents a sufficient fee, enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553–54. "[S]uperior results are relevant only to the extent it can be shown that they are the result of superior attorney performance." *Id.* at 554. However, in considering whether to decrease the lodestar, the district court must consider the plaintiff's degree of success.

9

*Hensley*, 461 U.S. at 436–37, 440 ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. . . . [W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.").

B.

Combs next argues that a low damages award should not lead the district court to reduce a fee award. In *Cobb v. Miller*, we explained that "[i]n the absence of other *Johnson* factors justifying a reduction in a fee award, a district court should not reduce the fee award solely because of a low damages award," because "[s]uch an approach would lead to a proportionality requirement between the amount of attorney's fees and the amount of damages." 818 F.2d 1227, 1235 (5th Cir. 1987).

*Cobb*, however, predated the Supreme Court's decision in *Farrar*. There, the Court clarified the relevance of a plaintiff's success, explaining that "[w]here recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar*, 506 U.S. at 114 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment) (omission in original)). Noting that this approach "promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case,'" *id.* at 114–15 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989)), the Court explained that the district court, by simply awarding the lodestar amount, failed to "consider[] the relationship between the extent of success and the amount of the fee award," *id.* at 115–16 (quoting *Hensley*, 461 U.S. at 438).

We have since recognized that "[a]warding attorney's fees based on the damages, or degree of success obtained, is completely in line with the holdings

10

No. 15-40436

of the Supreme Court and this Circuit."[3] *Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 802 (5th Cir. 2002). Accordingly, in a private civil rights suit, a district court must consider any disparity between the amount of damages sought and the amount of damages awarded.[4] *See Migis*, 135 F.3d at 1048 ("[T]he plaintiff's monetary success in a private civil rights suit must be the primary determinant of the attorney's fee."); *Hodges v. City of Houston*, 71 F.3d 877, 1995 WL 726463, at *4–5 (5th Cir. 1997) (unpublished table decision) (citing *Farrar* and concluding that a $65,000 fee award was "grossly excessive" where plaintiff "asserted $45,800 in monetary losses and requested $1 million in damages" but received only $3,500); *see also McAfee v. Bozcar*, 738 F.3d 81, 92–93 (4th Cir. 2013) ("[W]hen considering the extent of the relief obtained, we must compare the amount of damages sought to the amount awarded." (citation omitted)); *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2008) (concluding that Supreme Court precedent "suggest[s] that a comparison of damages awarded to damages sought is required"); *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1307–08 (11th Cir. 2001) (holding that where compensatory damages are "the primary relief sought and become the only relief obtained," the court may consider the amount of damages awarded in setting a fee award). The district court may properly compare what Combs sought with what she was ultimately awarded.

---

[3] Combs points to a number of cases stating that a low damages award, alone, is not a sufficient basis for a fee reduction. *See, e.g.*, *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *Singer v. City of Waco*, 324 F.3d 813, 830 (5th Cir. 2003). Each of those cases involved the Fair Labor Standards Act. In civil rights litigation, however, district courts must primarily consider the award of damages because "[t]he Supreme Court has twice made clear that the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." *Migis*, 135 F.3d at 1047 (citations and internal quotation marks omitted).

[4] This is not to say that this comparison always mandates a reduction of the fee award. The focus is "on the significance of the *overall* relief obtained by the plaintiff." *Hensley*, 461 U.S. at 435 (emphasis added).

11

No. 15-40436

C.

Finally, Combs argues that the district court erred by adjusting the lodestar amount based solely on strict proportionality considerations. On this, we agree.

1.

In determining a reasonable attorney's fee award based on the plaintiff's degree of success, "[t]here is no precise rule or formula"; instead, the district court "necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37. In *City of Riverside*, a Supreme Court plurality rejected the argument that fee awards "should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." 477 U.S. at 574. There, the district court awarded $245,456.25 in attorney's fees, even though the prevailing plaintiffs had received only $33,350 in damages. *Id.* at 564–66. The Court determined that the district court did not abuse its discretion in making this fee award. *Id.* at 572–73. The plurality explained that a proportionality rule "would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts" and thus undermine Congress's purpose in enacting civil rights statutes such as § 1988. *Id.* at 576–78.

After *City of Riverside*, we have consistently emphasized that "there is no *per se* requirement of proportionality in an award of attorney fees." *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991); *Hernandez v. Hill Country Tel. Co-Op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988); *see also West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) ("[U]nder civil rights statutes such as the ADEA, [t]here is no per se requirement of proportionality in an award of attorney fees." (second alteration in original) (citation and internal quotation marks omitted)). Nevertheless, proportionality remains "an

No. 15-40436

appropriate consideration in the typical case." *Hernandez*, 849 F.2d at 144; *see also Branch-Hines*, 939 F.2d at 1322–23.

The district court read our decision in *Migis* as capping a fees-to-damages ratio at 6.5:1. *Migis* involved the recovery of attorney's fees in a Title VII civil rights case. 135 F.3d at 1047–48. There, though the plaintiff sought $325,000 in damages, she was ultimately awarded only $12,233.32. *Id.* at 1048. The district court calculated a roughly $90,000 lodestar, *see id.* at 1062 (Barksdale, J., concurring in part and dissenting in part); despite the plaintiff's limited success, the district court reduced the lodestar by only 10% and awarded $81,000 in attorney's fees, *id.* at 1047. We reversed, concluding that the district court "fail[ed] to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought." *Id.* at 1048. Citing *Farrar*, we explained "that the plaintiff's monetary success in a private civil rights suit must be the primary determinant of the attorney's fee." *Id.* Observing that the plaintiff "sought over twenty-six times the damages actually awarded" and that the fees-to-damages ratio was 6.5:1, we concluded that these ratios were too large to justify the award. *Id.*

But *Migis* does not impose a strict proportionality requirement. Instead, it simply recognized that "'the most critical factor' in determining the reasonableness of a fee award in a civil rights suit 'is the degree of success obtained.'" 135 F.3d at 1047 (quoting *Farrar*, 506 U.S. at 114). In *Migis*, the plaintiff alleged four acts of discrimination on the basis of gender or pregnancy; she prevailed on only one claim, and even then, only on the basis of pregnancy discrimination. *Id.* She received just over $12,000 in damages instead of the $325,000 that she sought. *Id.* at 1048. "By any fair measure, [her] success relative to the relief she sought was limited." *Id.* The district court's meager 10% reduction of the fee award thus failed to adequately consider just how

13

limited the plaintiff's success was.[5] *Id.* at 1047; *see also Migis v. Pearle Vision, Inc.*, 944 F. Supp. 508, 515–16 (N.D. Tex. 1996) (noting that "the monetary damages awarded to plaintiff simply do not justify a fee award" of roughly $90,000 and decreasing award by only 10% without adequate explanation), *aff'd in part and rev'd in part*, 135 F.3d 1041.

And the *Migis* district court's explanation failed to "answer the question of what is 'reasonable' in light of" the plaintiff's limited success. *Hensley*, 461 U.S. at 439; *see also id.* at 439 n.15 (observing that "a mere conclusory statement that [a] fee [is] reasonable in light of the success obtained" is not a sufficient explanation); *Jimenez*, 621 F.3d at 379 (requiring a "reasonably specific explanation for all aspects of a fee determination" (citation and internal quotation marks omitted)); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (citing *Migis* and vacating a fee award that "was more than six times greater than the amount of relief awarded," but explaining that "this conclusion in no way implies that the attorney's fee award, if justified by a proper explanation, would be an abuse of discretion").

2.

A district court abuses its discretion if it "relies on erroneous conclusions of law." *Allen*, 813 F.3d at 572. Here, the district court explained that it was "constrained by the holding in *Migis*, to reduce the total to something less than 6.5 times the actual damages awarded." The district court properly recognized that proportionality between attorney's fees and damages may be considered in determining a reasonable fee. *See Migis*, 135 F.3d at 1048; *Hernandez*, 849

---

[5] We again note that, here, the lodestar reflected a 20% reduction in hours based on Combs's limited success.

14

No. 15-40436

F.2d at 144. But because our cases reject, and *Migis* does not impose, a per se proportionality requirement, the fee award must be vacated.[6]

## IV.

We VACATE the district court's award of attorney's fees and REMAND for determination of a new fee award in accordance with this opinion.

---

[6] Though we hold that *Migis* did not impose a strict proportionality requirement, in no way do we undercut the reasoning that led the *Migis* court to find an abuse of discretion. And of course, there are marked similarities between this case and *Migis*, including, for example, substantial disparities between the damages sought and the damages actually awarded. The district court should consider Combs's fee request anew in light of both our discussion and these similarities.

15